**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LORRAINE S.,**

                **Plaintiff,**

     **v.**                         **Civil Action 2:22-cv-2257
                                  Judge Algenon L. Marbley
                                  Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

                **Defendant.**

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Lorraine S., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.      BACKGROUND**

On August 26, 2019, Plaintiff protectively filed an application for DIB alleging disability beginning December 4, 2017. (Tr. 336–42). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on May 4, 2021. (Tr. 166–91). The ALJ denied Plaintiff's application in a written decision on May 18, 2021. (Tr. 11–36). When the Appeals Council denied Plaintiff's request for review, that denial became the final decision of the Commissioner. (Tr. 1–76).

Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the administrative record (Doc. 8), and the parties briefed the issues. (Docs. 9, 10, 11). The matter is ripe for review.

### A.      Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's hearing testimony as well as her statements to the agency:

> [Plaintiff] alleged that she has not been able to sustain full time work activity since the alleged onset date due to a combination of symptoms from her impairments including neck problems; all-over back problems; high blood pressure; mild aortic stenosis; chronic musculoskeletal pain; sleep apnea; numbness in the hands and toes; emotional conditions due to physical problems; and anxiety (2E; 3E; hearing testimony). The claimant reported she attended to self-care, was able to prepare complete meals; perform cleaning and laundry activities; drive; go out alone; shop for groceries; and manage finances (3E). She reported that she is not able to stand or sit more than an hour before experiencing significant pain from her neck down to her feet (3E:1). She also reported difficulty sleeping due to pain that wakes her up and keeps her awake at nighttime (3E:1). The claimant reported problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, and completing tasks due to her impairments (3E:6). She stated that she could lift no more than 10 pounds and experienced pain from the bottom of her feet up to her neck after standing "for so long" (3E:6). The claimant stated that she is able to follow written and spoken instructions "really good" and she generally gets along with everyone, but also stated that she can get irritated at times in stressful situations (3E:7).

(Tr. 20).

### B.      Relevant Medical Evidence

The ALJ also summarized Plaintiff's medical records and symptoms related to her fibromyalgia and other arthralgias during the relevant period:

> The claimant reported continued low back pain, bilateral lower extremity pain, and bilateral lower extremity numbness/tingling with ongoing neck pain and bilateral upper extremity pain (8F:3, 6; 9F; 10F; 12F:2-4). An MRI of the brain from August 2019 was normal with no signs of MS, and cervical MRI showed mild facet arthropathy at C4-C5; and the lumbar MRI did not show any significant central or foraminal stenosis (8F:4, 18). At that time, surgery was not recommended and she was referred for a spinal cord stimulator trial for lumbar radiculopathy and arthropathy of cervical spine facet joint (8F:4). The claimant treated with prescribed pain medication and lumbar transforaminal epidural steroid injections as well as sacroiliac joint injections, but did not report much relief of pain symptoms (9F:2-9, 32; 10F:28-35; 12F:2-4).
>
> The claimant continued to report bilateral hip pain in January 2020, and an x-ray revealed hip joint spaces were preserved, alignment anatomic, and SI joints were intact, with overall normal exam findings (7F:58). She was referred for a consultation in February 2020 for her longstanding history of arthralgia affecting

2

the cervical and lumbar spines (14F:2). Physical exam findings noted gait was without antalgia – she could plant, lift, and pivot without difficulty; she had good range of motion without pain in the head and neck; she had good range of motion without pain in the bilateral upper and lower extremities; spine had good forward and side bend; strength and coordination were normal (14F:4). The exam findings also noted "multiple trigger points to palpation involving the trapezius, deltoids, paracervical spinal muscles and paralumbar spinal muscles" but the exact number and location of the trigger points were not specified (14F:4). Treatment records indicted "likely fibromyalgia" and osteoarthritis seemed to be localized to the cervical and lumbar spine, and she was continued on gabapentin and Effexor was optimized to 112.5 mg/day (14F:4). In February 2020, the claimant also underwent bone density testing of the lumbar spine and in her hip, which revealed normal bone mineral density in the lumbar spine, the total hip, and the femoral neck (7F:52-53). She also reported ongoing pain in the hands and wrists (17F:6-9). X-rays of the left wrist from June 2020 showed early osteoarthritis at the thumb CMP joint and STT joint, otherwise negative findings of the left wrist and hand (17F:9-10).

Treatment records from August 2020 noted the claimant followed up for her complaints of pain in the neck, back, arms, and legs (19F). She reported some mild improvement with Gabapentin 900mg nightly, and independent home exercises were recommended and the claimant also reported she walked and performed home pool therapy for fibromyalgia pain (19F:7). Physical exam findings from a follow up in August 2020 noted some mild decrease in light touch around the area of the left biceps; but deep tendon reflexes were negative bilaterally, she had good range of motion with pain of the upper and lower extremities; good forward and side bend of the spine; good range of motion of the head and neck without pain; and gait without antalgia (19F:8-9).

(Tr. 23).

## C. The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirement on December 31, 2020 and did not engage in substantial gainful employment during the period from her alleged onset date of December 4, 2017, through her date last insured of December 31, 2020.  (Tr. 16).  The ALJ determined that, during that time, Plaintiff had the following severe impairments: disorders of the cervical and lumbar spine; and a depressive disorder.  (*Id.*).  Still, the ALJ found that Plaintiff's impairments, either singly or in combination, did not meet or medically equal a listed impairment.  (Tr. 17).

As to Plaintiff's residual functional capacity ("RFC"), through the date last insured, the

ALJ concluded:

> [Plaintiff] had the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except she can lift/carry 20 pounds occasionally, 10 pounds
> frequently; can stand six out of eight, can sit six out of eight, and walk six out of
> eight hours; occasionally use ramps and stairs; never climb ladders, ropes, or
> scaffolds; occasionally stoop, kneel, and crawl; frequently crouch; must avoid
> entirely dangerous machinery and unprotected heights; She can do no complex
> [tasks]; simple (routine) tasks which I define to mean this person has the basic
> mental aptitude to meet the demands of competitive, remunerative, unskilled work
> including the abilities to, on a sustained basis, understand, carry out, and remember
> simple instructions; can respond appropriately to supervision, coworkers, and
> usual work situations; and can deal with changes in routine work settings; can
> focus attention on simple or routine work activities for at least 2 hours at a time
> and can stay on task at a sustained rate such as initiating and perform a task that
> they understand and know how to do; can work at an appropriate and consistent
> pace and can complete tasks in a timely manner; can ignore or avoid distractions
> while working; can change activities or work settings without being disruptive;
> can do only low stress work meaning no high production quotas or piece rate work;
> and can have occasional interactions with public and co-workers, meaning she is
> limited to speaking, signaling, taking instructions, asking questions and similar
> contact.

(Tr. 19).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements

concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely

consistent with the medical evidence and other evidence in the record …" (Tr. 20).

Relying on the vocational expert's testimony, the ALJ found that, through the date last

insured, Plaintiff was unable to perform her past relevant work as a warehouse worker or order

clerk. (Tr. 28). However, through the date last insured, considering her age, education, work

experience, and RFC, there were jobs that existed in significant numbers in the national economy

that Plaintiff could have performed, such as an inspector, retail marker or office helper. (Tr. 28–

29). The ALJ therefore concluded that Plaintiff "was not under a disability, as defined in the Social

Security Act, at any time from December 4, 2017, the alleged onset date, through December 31,

4

2020, the date last insured (20 CFR 404.1520(g)).” (Tr. 29–30).

## II.  STANDARD OF REVIEW

The Court's review “is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.” *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). “[S]ubstantial evidence is defined as ‘more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.’” *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

“After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court.” *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, “even if a reviewing court would decide the matter differently.” *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.  DISCUSSION

In her Statement of Errors, Plaintiff contends that the ALJ erred by: (1) not classifying her fibromyalgia as a “medically determinable” impairment at step two (Doc. 9 at 9–15); and (2) failing to properly evaluate the opinion provided by Eric Lirio, M.D. (i*d.* at 15–19).

### A.  Fibromyalgia at Step Two

Plaintiff argues that the evidence of the record clearly supports a finding that her fibromyalgia is a medically determinable impairment and because the ALJ failed to classify her

fibromyalgia as either a severe or non-severe impairment, he gave no consideration to how Plaintiff's fibromyalgia, would impact her ability to work. (Doc. 9 at 9–15).

At step two, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. Additionally, to be classified as "medically determinable," an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017).

The finding of at least one severe impairment at step two is merely a threshold inquiry, the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

6

Here, the ALJ determined that Plaintiff had at least one medically determinable impairment and moved on with the analysis. Particularly, he found that Plaintiff had the following severe impairments: disorders of the cervical and lumbar spine; and a depressive disorder. (Tr. 16). In such a situation, the ultimate inquiry is whether substantial evidence supports the RFC fashioned by the ALJ. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 416.945(a). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1–2 (July 2, 1996). The Sixth Circuit has explained that "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

After finding Plaintiff had severe impairments, the ALJ considered the record and evaluated the effects of Plaintiff's impairments on her ability to work. The ALJ briefly discussed Plaintiff's diagnosis of fibromyalgia when formulating the RFC. (*See e.g.,* Tr. 23 ("Treatment records indicated 'likely fibromyalgia'. . .") (citing Tr. 1168)). However, even if the ALJ should have classified Plaintiff's fibromyalgia as a medically determinable impairment, the ALJ's failure to discuss fibromyalgia at step two amounts to harmless error. While the ALJ only briefly addressed fibromyalgia in his decision, he considered its relevant symptoms and limited Plaintiff's RFC to account for mobility issues and pain. (Tr. 19 ("[S]he can lift/carry 20 pounds occasionally, 10 pounds frequently; can stand six out of eight, can sit six out of eight, and walk six out of eight hours; occasionally use ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally

stoop, kneel, and crawl; frequently crouch; must avoid entirely dangerous machinery and unprotected heights. . .")).

Nowhere does Plaintiff explain how the ALJ should have further limited the RFC to account for Plaintiff's fibromyalgia.  Additionally, "opinions that focus upon objective evidence are not particularly relevant" when considering claims involving fibromyalgia. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243–44 (6th Cir. 2007).  And the ALJ extensively reviewed the subjective evidence—Plaintiff's testimony and claims of chronic, widespread pain—along with an in-depth summary of medical opinions in the record, in formulating the RFC.  (Tr. 20–24).  As such, substantial evidence supports the ALJ's RFC determination.

At base, Plaintiff appears to suggest that because she was diagnosed with fibromyalgia and received some treatment, more limitations were required in the RFC.  Yet, beyond diagnosis, the evidence does not demonstrate that the ALJ erred by not classifying the impairment as "severe." And again, Plaintiff does not explain how the diagnosis of fibromyalgia—standing alone or in combination with her subjective complaints—leads to a different RFC.  Indeed, the ALJ considered Plaintiff's pain and mobility issues already.  *See NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969), *quoted in Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (noting that where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game").  The ALJ did not commit reversible error at step two.

### B.  The ALJ's Evaluation of Dr. Lirio's Opinion

Plaintiff also contends that the ALJ improperly evaluated the opinion provided by Eric Lirio, M.D.  (Doc. 9 at 15–19).  A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012).  A claimant's RFC assessment must

be based on all the relevant evidence in his or her case file. *Id.*; *see also* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017).

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1]   20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 404.1513(a)(2), (5).

a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

At bottom, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

Here, the ALJ determined that Plaintiff had "the residual functional capacity to perform light work" with additional limitations:

> [Plaintiff] can lift/carry 20 pounds occasionally, 10 pounds frequently; can stand six out of eight, can sit six out of eight, and walk six out of eight hours; occasionally use ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, and crawl; frequently crouch; must avoid entirely dangerous machinery and unprotected heights; She can do no complex [tasks]; simple (routine) tasks which I define to mean this person has the basic mental aptitude to meet the demands of competitive, remunerative, unskilled work including the abilities to, on a sustained basis, understand, carry out, and remember simple instructions; can respond appropriately to supervision, coworkers, and usual work situations; and can deal with changes in routine work settings; can focus attention on simple or routine work activities for at least 2 hours at a time and can stay on task at a sustained rate such as initiating and perform a task that they understand and know how to do; can work at an appropriate and consistent pace and can complete tasks in a timely manner; can ignore or avoid distractions while working; can change activities or work settings without being disruptive; can do only low stress work meaning no high production quotas or piece rate work; and can have occasional interactions with public and co-workers, meaning she is limited to speaking, signaling, taking instructions, asking questions and similar contact.

(Tr. 19). In coming to this determination, the ALJ considered Plaintiff's medical and non-medical evidence, including Plaintiff's treatment history, medical opinions from her providers, her subjective complaints, and her daily activities. (Tr. 19–28).

Plaintiff challenges the ALJ's evaluation of just one medical opinion, that of Dr. Eric Lirio. Dr. Lirio indicated that Plaintiff could sit, stand, or walk for a total of about 4 hours in an 8-hour workday. (Tr. 1283). Based on Dr. Lirio's assessment, Plaintiff would sometimes need to take unscheduled breaks of thirty minutes throughout the workday, and she would be off-task at least twenty-five percent of the time. (Tr. 1284). In his opinion, she estimates that Plaintiff would miss more than two days of work per month. (*Id.*).

The ALJ found Dr. Lirio's opinion to be unpersuasive because it is "not fully supported by the longitudinal treatment records during the relevant period . . .". (Tr. 25). In explanation, the ALJ determined:

> [Dr. Lirio's] opinions are included on a check-box form and do not include explanation or citation to support in the records for the level of limitation included. Further, the level of limitation is not fully supported by the longitudinal treatment records during the relevant period – specifically the limitations on standing/walking; use of hands, fingers, and reaching; off-task percentage of a typical day; additional breaks; and absences per month. Dr. Lirio's treatment records from August 2020 noted the claimant had good range of motion of the upper and lower extremities with pain; demonstrated good forward and side bend of the spine; exhibit non-antalgic gait; had good range of motion without pain of the neck; and while she had symptoms[,] she was stable overall (19F:8-10).

(*Id.*).

The ALJ thus provided several reasons for discounting the opinion. First, he determined that Dr. Lirio's opinion was not fully supported. This is because Dr. Lirio provided no explanation or citations to Plaintiff's medical records for the level of limitation included. Dr. Lirio's opinion is in a checklist form, so the ALJ's contention that there is little narrative explanation of her restrictive opinion is correct. (Tr. 1283–84). More still, when evaluating Dr. Lirio's treatment

11

notes, the ALJ found the notes to be unsupportive of the restrictive opinion.  In his treatment notes, dated approximately four months prior to the execution of his medical opinion form, Dr. Lirio said Plaintiff appeared well and without distress and had good range of motion with no pain, normal gait, and no tenderness.  (Tr. 1210).  In previous treatment notes, Dr. Lirio noted the same.  (Tr. 1167–68).  Thus, the ALJ's reasoning has support.

In sum, the ALJ looked at Dr. Lirio's opinion and found it not fully supported due to his lack of narrative explanation and lack of support from his own treatment notes.  (Tr. 25).  The ALJ clearly considered the opinion's supportability and sufficiently explained his decision to enable review by the Undersigned.  Thus, ALJ satisfied the regulations.  *See* 20 C.F.R. § 404.1520c(b)(2).

Next, the ALJ found that Dr. Lirio's restrictive opinion was inconsistent with the record. (Tr. 25).  Plaintiff challenges the ALJ's evaluation of consistency.  She says the ALJ should have considered her history of ongoing and widespread pain and symptoms such as fatigue, poor sleep, allodynia, numbness and tingling, tenderness, joint stiffness, brain fog, and muscle weakness. (Doc. 9 at 17–18 (citing Tr. 25, 116, 458, 1064, 1183–84)).  At base, Plaintiff is arguing that Dr. Lirio's opinion is consistent with the record.

Indeed, as Plaintiff asserts, the ALJ did not expand upon how Dr. Lirio's medical opinion is "not fully supported by the longitudinal treatment records during the relevant period." (Tr. 25). But an ALJ is not required to repeat his analysis of the evidence in his evaluation of a medical opinion.  *Carlene C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-245, 2022 WL 278168, at *5 (S.D. Ohio Jan. 31, 2022); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered).

Here, the ALJ extensively considered Plaintiff's medical record in determining her RFC. The ALJ considered records documenting Plaintiff's widespread pain, numbness, and difficulty

with prolonged sitting or standing.  (Tr. 20–24 (citing Tr. 198–228, 380–398, 458, 462, 468, 470–472, 474–476, 490, 492–95, 497, 499–500, 505–09, 520–25, 535, 571, 574, 576–77, 597, 618, 698–99, 731–34, 751–52, 764, 786, 794–95, 801, 825–26, 836–37, 880, 883, 936–37, 942, 946–47, 1030–31, 1033–35, 1046, 1056–94, 1095–1147, 1160–62, 1167, 1169, 1185–89, 1247–82)).  But the ALJ also noted that Plaintiff had normal strength and coordination, gait without antalgia, and a good range of motion without pain.  (Tr. 23 (citing Tr. 1167, 1197)).  He also indicated that treatment plans for Plaintiff's medical issues were conservative.  (Tr. 24).

And the ALJ did more.  Beyond the medical record, the ALJ reviewed other medical opinions from state agency physicians and Plaintiff's treating physicians.  (Tr. 25–27).  Notably, the state agency physicians, who are highly trained medical professionals familiar with the rules and regulations of disability determinations, assessed that less restrictive limitations were warranted in Plaintiff's case.  (Tr. 198–215, 217–28 (opining that Plaintiff could sit, stand, or walk for six out of an eight-hour workday and had no manipulative limitations)).  And the ALJ considered Plaintiff's testimony and her daily activities.  He looked at Plaintiff's reports that she could attend to her self-care, prepare meals, perform cleaning and laundry activities, drive, and shop for groceries.  (Tr. 20).

In sum, the ALJ properly considered medical and non-medical evidence, including Dr. Lirio's medical opinion.  The ALJ's analysis of this opinion allowed the Court to conduct a review of the decision because he built a logical bridge between the evidence and his conclusion.  Fundamentally, Plaintiff disagrees with how the ALJ weighed the evidence.  But the ALJ is charged with resolving conflicts in the medical evidence.  *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  And the law prohibits the Court from reweighing the evidence and substituting its judgment for the ALJ's.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir.

2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

## IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 9) and **AFFIRM** the Commissioner's decision.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:   November 30, 2022                     /s/ Kimberly A. Jolson
                                              KIMBERLY A. JOLSON
                                              UNITED STATES MAGISTRATE JUDGE